## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : <br> : <br> **MARK T. HAWKINS** : <br> : **Bankruptcy No. 10-23554-BM** <br> : <br> Debtor : | |

---

| | |
|---|---|
| **SHERRY JUSTICE SALES, LLC,** : <br> Plaintiff, : **Chapter 7** <br> : <br> v. : <br> : **Adversary No. 11-02202-BM** <br> **MARK T. HAWKINS,** : <br> Defendant. : | |

Appearances:    Brittani Agona, Esq., for Sherry Justice Sales, LLC.
               James A. Prostko, Esq., for Mark Hawkins.


### MEMORANDUM OPINION

Before the court is Sherry Justice Sales, LLC. ("Justice Sales") seeking a declaration by the court of the nondischargeability of $96,000 owed to it by Debtor pursuant to 11 U.S.C. §. 523(a)(2)(A). Sherry Justice, owner of Sherry Justice Sales, LLC, testified on behalf of Sherry Justice Sales that she loaned money to the Debtor on the basis of his false representations, fraud, and false pretenses. As such, Plaintiff asserts that 11 U.S.C. §. 523(a)(2)(A) bars dischargeability of her claims against Debtor.[1]

---

[1] Sherry Justice personally loaned the money to Debtor, but the claim was filed by Sherry Justice Sales, LLC.

We hold that there were no such false representations, fraud, or false pretenses. However, even if there were, we do not believe that Mrs. Justice could have justifiably relied on those statements given her knowledge of the business and her sophistication developed through her twenty years in the industry.

## - FACTS -

Debtor served as the president and was an owner of one-third of Hawkins Precast Concrete Products, LLC. ("Business"). Cindy Barbero served as controller of Business.

In August of 2007, Debtor hired Sherry Justice as an independent sales agent. Plaintiff and Debtor had a personal relationship that had existed for many years prior to his hiring Mrs. Justice. She was compensated $1000 per month plus 100% health insurance coverage. In this role, Mrs. Justice's duties included finding and bidding on jobs, booking orders, giving quotes, etc. The bidding process required her to complete paperwork detailing the costs of creating a product. She also had a working understanding of such costs as she had twenty years of experience in the construction industry. During her time with the Business, Mrs. Justice did not have access to its books. However, she did have access to the emails of the officers of the Business, as well as to information regarding the balance of its bank account. Also, the controller constantly shared information concerning business operations with her. After a period of time, Plaintiff was considered a temporary employee.

In May of 2008, Debtor approached Mrs. Justice about borrowing money to use for payment of Business expenses. She agreed and loaned Debtor $10,000. He eventually gave her a check, which she was never able to cash because every time it

was presented, there were insufficient funds. He personally guaranteed that he would pay her back even if the business was unable to do so. Plaintiff claims that assertions such as these led her to continue loaning money to the Debtor. Debtor admits that he did continually represent that the business was profitable and that it would be able to pay back its loans, despite its having a $900,000 judgment of confession against it. She continued to loan him money until the two parted ways in May of 2010.

During the period of May 2008 through May 2010, Mrs. Justice continued to loan Debtor money for business expenses and projects. In many cases, Mrs. Justice borrowed the money on credit cards and Debtor would make payments on the credit card. Debtor continued to make payments on the credit cards through December of 2009, at which point the payments ceased. After December 2009, Plaintiff also collected receivables of the Business in repayment. During this time, Debtor personally guaranteed to repay Plaintiff, even if the business would be unable to do so. Debtor also borrowed money from Cindy Barbero (controller), who was also a creditor in this case. On March 31, 2010, the Sherry Justice drafted a promissory note, which the Debtor amended and signed stipulating that he owed her $102,309 based on the money she had loaned him up to that point and that he also owed her $49,799.98 for use of her water account. Mrs. Justice loaned Debtor money after the signing of the promissory note, but never amended the note to reflect the additional loans. Currently, Debtor owes Plaintiff $96,000. The promissory note included a variety of collateral including the contents of the farmhouse owned in joint tenancy by Debtor and his wife. However, the promissory note referred to the house as "property of Mark T. Hawkins", but did not include his wife. Mrs. Justice had been in this house and had seen that it was full of

antiques collected by Debtor. These antiques were the "contents" referred to in the promissory note. On occasion, Debtor told Mrs. Justice that he was proud of his antiques and that he had collected the antiques and decorated the farm house himself.

In the meantime, the Business, through Debtor and Cindy Barbero (controller of the Business) encouraged Mrs. Justice to pursue minority status for purposes of government contracts and by October of 2008, Justice Sales, LLC was in business and remained a sales agent for the Business[2]. Mrs. Justice would bid on jobs as an agent for Justice Sales, as well as for Business. If Justice Sales received the job, it would then contract with the Business for the manufacturing of the goods.

In April of 2010, Business filed a Chapter 11 petition after a creditor of the Business confessed judgment and froze its bank accounts. Subsequently, the case was converted to a Chapter 7 and the Business was forced to close. The conversion was required because of the objection by two creditors to the feasibility of the plan, including Justice Sales. On April 12, 2011, Justice Sales filed her claim against Debtor. Doc.No.1. Plaintiff asserts that in her continuing to loan the Debtor money, she relied on Debtor's representations of the financial circumstances of the business, as well as the assets pledged as collateral in the promissory note dated March 31, 2010. Plaintiff also claims that the Debtor never intended to repay the Plaintiff and that such representations were also false representations. Plaintiff claims that based on these statements, 11 U.S.C. §. 523(a)(2)(A) has been satisfied and that the debt owed to Plaintiff is nondischargeable

---

[2]Although the parties agreed that after a period of time, Plaintiff was considered a temporary employee, Justice Sales also serviced two other unrelated companies.

## - Discussion –

The Bankruptcy Code is built around the principle of providing a debtor a fresh start free from debts; however, such a fresh start is available only to an "honest, but unfortunate debtor." *Insurance Company of North America v. Cohn (In re Cohn),* 54 F.3d 1108, 1113 (3d Cir.1995).

In keeping with the requirement that a debtor be honest, 11 U.S.C. § 523(a)(2)(A) denies dischargeability for debts that are for money obtained by false pretenses, false representations, or actual fraud, other than a statement regarding financial conditions of the debtor.

In order to prevail in a case based on a claim under 11 U.S.C. §523 (a)(2)(A), Justice Sales, as Plaintiff, must prove by a preponderance of the evidence the existence of the following five factors: (1) Debtor made a representation;(2) at the time of the representation, Debtor knew it to be false;(3) Debtor made the representation with the intent and purpose of deceiving Plaintiff;(4) Plaintiff relied upon the false representation; and(5) Plaintiff suffered a loss as a proximate result of the representation. *In re Barnette,* 281 B.R. 869, 874 (Bankr.W.D.Pa.2002).

In order to prevail on a claim under §523 (2)(A)(2), Debtor must have made a representation.  However, the code expressly excludes representations regarding the financial condition of the Debtor.  There is question in this case as to whether or not the Debtor made false representations that would satisfy even this first requirement.

The first false representation the Plaintiff asserts is that the Debtor indicated to her that the Business was profitable and would be able to repay her because of its profitability. Such an assertion is based on the financial conditions of the Debtor and as such, is not a

false representation for purposes of §523(a)(2)(A). Even if an argument could be made that this false representation is more than the financial condition, Plaintiff would have to prove the remaining requisite elements.

There is no evidence, and certainly not a preponderance of the evidence as required by the Code, that at the time the Debtor represented that the business was profitable, he knew such representation was false. Debtor admits to continually representing that the business was profitable. However, there is no evidence that he did not believe such statement to be true; if anything, there is evidence that he did believe the condition to be true. He had paid down a confession of a judgment and could have seen this as a indicator of profitability. Also, the Business was continuing to bid on, get, and complete jobs.

The Plaintiff also has to prove that when making such statement, the Debtor intended to deceive the Plaintiff. Intent to deceive may be established based on the facts and circumstances of an individual case and may be inferred when the facts and circumstances present a picture of deceptive conduct on the part of the Debtor. *In re Bruce,* 262 B.R. 632, 636(Bankr.W.D. Pa.2001). The facts and circumstances of this case do not show that the Debtor intended to deceive by indicating that the company was profitable. At the time of making the statement, he believed that his company could gain profitability and he also could have seen the company as being profitable, given its ability to pay down the confession of judgment and to continue completing jobs.

The fourth element is also problematic to the plaintiff's case. In order to prevail on this claim, the Plaintiff has to prove that she justifiably relied on false representation of the debtor. Justifiability is different from reasonableness in the sense that it is based on

qualities and characteristics of the particular individual who relies on a particular representation. *In re Scott*, 294 B.R. 620, 629 (Bankr.W.D. Pa.2003). Citing: *Field v. Mans,* 516 U.S. 59, 68, 116 S.Ct. 437, 442–43, 133 L.Ed.2d 351 (1995). In the case at bench, the Mrs. Justice was not justified in relying on such a representation. She had access to the business's bank accounts and the officer's email accounts. She also gained a great deal of information from the controller. Also, Mrs. Justice had twenty plus years of experience in the industry and knew what is required of a company to be profitable. Her requiring the Debtor to sign a promissory note less than a month prior to the Business' filing bankruptcy also serves as evidence of her knowledge of the Business' deteriorating state.

The Plaintiff's other allegations of false representations made by the Debtor also fail to meet the five requirements necessary to prevail on a claim under §523 (a)(2)(A) of the Code.

The Plaintiff claims that the Debtor never intended to repay her and as such, the personal guarantees made by the Debtor, as well as the other representations of intent to repay were false representations for purposes of §523 (a)(2)(A) of the Code.

It is well established that without more, a broken promise to repay will not sustain a cause of action under §523 (a)(2)(A) of the Code. *In re Singh*, 433 B.R. 139, 163 ( Bankr. E.D.Pa. 2010). Such inquiry centers on a subjective standard of intent given the totality of the circumstances. *Id.* In the case at bench, the Plaintiff has failed to sustain its burden of preponderance of the evidence in establishing that the Debtor did not intend to repay her. Plaintiff points to the financial state of the Business and asks the court to infer that Debtor had knowledge of the state of the Business and as such, could not have possibly expected to repay the Plaintiff. However, if anything, the evidence contradicts such alleged intent to

deceive. The Debtor signed a promissory note and partially repaid Mrs. Justice. In fact, he repaid the Plaintiff a significant amount of his debt. This included making payments on the credit cards used by Mrs. Justice to borrow money for the Debtor. As such, the Plaintiff failed to meet its burden for showing that this was a false representation fulfilling §523 (a)(2)(A) of the Code. Based on Debtor's repayment of some of the debt, we find this assertion groundless.

The final false representation asserted by the Plaintiff is focused on the collateral put forth in the promissory note signed by Mrs. Justice and Debtor on March 31, 2010. The Plaintiff asserts that she relied on the Debtor's representation that the antiques in the farmhouse were owned only by the Debtor, when in fact, the antiques were owned by both the Debtor and his wife.

There are several issues with this allegation. The Plaintiff has not put forth any evidence that the Debtor intended to deceive the Plaintiff by making such assertions or that Mrs. Justice justifiably relied on the assertions to lend. As previously discussed, intent is based on the facts and circumstances of each case. *In re Bruce,* 262 B.R. at 636. Here, the Debtor is not a lawyer and is not so sophisticated that he would know the consequences of suggesting that the antiques were solely his versus shared between himself and his wife. Also, the context in which the statements were made suggest that he was not intending his statements to be relied upon. The topic of his antiques came up in the context of the Debtor expressing his pride regarding his antiques.

Mrs. Justice did not justifiably rely on such representation. Although it is included in the promissory note, most of the money she had loaned the Debtor occurred before the signing of the promissory note. Also, even if Plaintiff is suggesting that she relied on the

mere statements and the existence of the antiques, Mrs. Justice is not justified in relying on such. As was the case with Debtor, it is unlikely that the Mrs. Justice recognized a distinction between personal property owned solely by the Debtor and personal property owned by both the Debtor and his wife.

Because the Plaintiff has failed to prove by a preponderance of the evidence that any of the three alleged false representations made by the Debtor satisfied the requirements of §523 (a)(2)(A) of the Code, we deny the declaration sought by the Plaintiff, Justice Sales, LLC.

An appropriate order will be entered.

  January 30,2012                                                              /s/

DATE                                                      BERNARD MARKOVITZ
                                                           U.S. Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** : |  |
| : |  |
| **MARK T. HAWKINS** : |  |
| : | **Bankruptcy No. 10-23554-BM** |
| : |  |
| Debtor : |  |
| ................................................................:............................................................................... |  |
| **SHERRY JUSTICE SALES, LLC,** : |  |
| Plaintiff, : | **Chapter 7** |
| : |  |
| v. : |  |
| : | **Adversary No. 11-02202-BM** |
| **MARK T. HAWKINS,** : |  |
| Defendant. : |  |

### ORDER OF THE COURT

**AND NOW**, this **30th** day of **January , 2012**, for the reasons expressed in the foregoing Memorandum Opinion, we hereby **DENY** the Plaintiff's request for a declaration of the nondischargeability of the Debtor's obligations to the Plaintiff.

| | |
|---|---|
| <u>January 30,2012</u> | <u>/s/                                             </u> |
| Date | BERNARD MARKOVITZ |
| | U.S. Bankruptcy Judge |

: